**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2978
_____

IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/
DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION

Debra K. Browning and Rick E. Browning,
                                                                Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-99-cv-20593; 2-11-md-01203; 2-16-md-01203)
District Judge: Hon. Harvey Bartle, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 3, 2019

Before: SMITH, *Chief Judge*, JORDAN, and MATEY, *Circuit Judges*.

(Filed: June 25, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

Debra K. Browning appeals the District Court's August 7, 2018 order denying her claim for benefits under the Diet Drugs Nationwide Class Action Settlement Agreement (the "Settlement Agreement").[1] Finding no error, we will affirm.

## I.

A.    *The Diet Drugs Class Action Settlement*

In 2000, Wyeth, the successor in interest to America Home Products, settled a class action related to certain diet drugs.[2] *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 180–81 (*Patterson*) (3d Cir. 2008). Under the continuing supervision of the District Court, the AHP Settlement Trust (the "Trust") administers and reviews claims by class members to determine their qualification to participate in the settlement. *See id.* at 180. The class settlement agreement uses matrices that assess factors such as age, length of illness, and medical severity, to determine the amount each claimant may recover from the Trust. *Id.* at 181. The Settlement Agreement requires that each claim for these "Matrix" benefits be supported by a reasonable medical basis. *Id.* So claims submitted to the Trust must come with a physician's attestation. *See id.* at 182.

---

[1] Browning's husband Rick E. Browning also appeals his derivative claim. As his claim arises solely from hers, we discuss only her case.

[2] We write only for the benefit of the parties thus we do not provide a full recitation of the facts. A detailed description of the Diet Drugs litigation is available in our prior opinions. *See, e.g.*, *In re Briscoe*, 448 F.3d 201, 206–08 (3d Cir. 2006); *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 147–48 (3d Cir. 2005); *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 389–92 (3d Cir. 2004); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 225–29 (3d Cir. 2002).

In 2002, the District Court ordered the Trust to audit all claims for medical reasonableness. *In re Diet Drugs*, No. Civ.A. 99–20593, 2002 WL 32067308, at \*5–6 (E.D. Pa. Nov. 26, 2002). The next year, the District Court, with the consent of the parties, approved new "Audit Rules" for the review of claims submitted to the Trust. *In re Diet Drugs*, No. Civ.A. 99–20593, 2003 WL 22023394 (E.D. Pa. Mar. 26, 2003). The Audit Rules now guide the Trust's scrutiny of the medical basis for a successful settlement claim and underlie the issues in this appeal.

B.     *Browning's Claim with the Trust*

Browning submitted her claim for benefits in November 2015 with the attestation of her physician Richard DiNardo. Citing an echocardiogram dated August 5, 2015, Dr. DiNardo diagnosed Browning as suffering from moderate mitral regurgitation, an abnormal left atrial dimension, and a reduced ejection fraction of 50% to 60%. Under the applicable Matrix, this diagnosis qualified Browning for "Level II" benefits equaling $604,808.

Following the Audit Rules, the Trust forwarded the claim for review to Zuyue Wang, a cardiologist retained by the Trust. Dr. Wang reviewed the echocardiogram and other studies, reports, and materials submitted by Browning and concluded that there was no reasonable medical basis for Dr. DiNardo's finding that Browning exhibited moderate mitral regurgitation. This alternate conclusion was significant, because Level II benefits for mitral valve damage require at least moderate mitral regurgitation, as well as one of the five complicating factors listed in the Settlement Agreement. Under the Settlement

3

Agreement, moderate mitral regurgitation has an objective definition and exists only where the regurgitant jet area ("RJA") in any apical view is equal to or greater than 20% of the left atrial area ("LAA"). Dr. Wang's reading of Browning's 2015 echocardiogram found an RJA/LAA of 18%, below the required 20% ratio threshold. Based on this diagnosis, the Trust denied Browning's claim.

Browning, backed by Dr. DiNardo, challenged the denial of her claim, arguing that her echocardiogram showed a reasonable medical basis for a diagnosis of moderate mitral regurgitation. Dr. DiNardo stood by his reading of the August 2015 echocardiogram as showing "mitral regurgitation near the border between mild and moderate mitral valve regurgitation." (App. at 421.) And Dr. DiNardo noted that Browning complained of worsening chest pain and heart palpitations, consistent with moderate mitral valve regurgitation. Although not required to do so by the Audit Rules, the Trust forwarded Browning's case back to Dr. Wang for a second review. Dr. Wang confirmed her original measurements of the RJA/LAA ratio and again found no reasonable medical basis for a diagnosis of moderate mitral regurgitation. She also dismissed Dr. DiNardo's references to Browning's other symptoms as "not indicative of moderate mitral regurgitation." (*Id.* at 488.)

Browning disputed this second review, and the Trust applied to the supervising District Court for an order to show cause requiring Browning to demonstrate her entitlement to benefits. The District Court issued the order and referred the matter to a Special Master. Both parties submitted their documents from the earlier reviews to the

4

Special Master. Browning, with the permission of the Special Master, supplemented her materials with a fresh affidavit from a second physician, Dalton McLean. Dr. McLean stated that he evaluated Browning's August 2015 echocardiogram using three separate measurements of Browning's RJA/LAA, finding each greater than the 20% ratio. On these findings, Dr. McLean concluded "to a reasonable medical certainty that Ms. Browning had moderate mitral valve regurgitation." (App. at 682–83.)

Additional medical disputes followed. The Trust questioned the accuracy of Dr. McLean's measurements; Browning countered with responsive arguments; and Dr. McLean submitted a second affidavit defending his methodology and conclusion. The Special Master declined to allow Dr. McLean's new affidavit and appointed Gary J. Vigilante as an independent technical advisor to sort through the remaining evidence. Dr. Vigilante concluded that Dr. McLean's and Dr. Wang's measurements of the LAA were inaccurate and produced inflated RJA/LAA ratios. In his opinion, there was no reasonable medical basis for Dr. DiNardo's conclusion that Browning had moderate mitral regurgitation.

The Special Master forwarded the record and the technical advisor's report to the District Court for review. The District Court considered it all, and ultimately credited the findings of both Dr. Vigilante and Dr. Wang. Finding that Browning failed to meet her burden of establishing a reasonable medical basis, the District Court affirmed the Trust's denial of her claim. Browning timely appealed.

**II.**

We exercise jurisdiction over a final order of the District Court under 28 U.S.C. § 1291. *Patterson*, 543 F.3d at 184 n.10. "We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." *Id.* An abuse of discretion "must rest on 'a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Id.* "The test is not what this court would have done under the same circumstances; that is not enough. The court must feel that only one order could have been entered on the facts." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001).

Browning raises two claims: 1) the finding that she didn't provide a reasonable medical basis for moderate mitral regurgitation; and 2) the Special Master's decision to deny her request to file a supplemental expert affidavit. We find no error in either.

**A.**

We begin with the District Court's conclusion that Browning failed to show a "reasonable medical basis" for her alleged condition.

First, Browning argues that the District Court gave insufficient weight to her symptoms supporting a diagnosis of moderate mitral regurgitation. She points to evidence of an enlarged left atrium, a reduced ejection fraction, chest pain, shortness of breath, irregular heartbeat, and palpitations. But without disputing the presence or severity of these symptoms, none are relevant under the standards set forth in the Settlement Agreement absent an RJA/LAA ratio above 20%. A claim for Level II benefits requires

6

an RJA equal to or greater than 20% of the LAA *and* at least one of five specified complicating factors. Because Browning did not show the required RJA/LAA ratio, the District Court did not abuse its discretion by not considering her other symptoms.

Second, Browning argues the District Court should have accepted the opinions of her physicians who diagnosed moderate mitral regurgitation. We have explained that a claimant seeking to challenge the findings of an auditing cardiologist or technical advisor must present evidence rebutting the medical basis for those opinions. *Patterson*, 543 F.3d at 190. Here, the District Court correctly noted that Browning's experts merely disagreed with the conclusions of the auditing cardiologist and technical advisor and failed to rebut their findings. The District Court did not abuse its discretion in declining to accept Dr. DiNardo's and Dr. McLean's competing, rather than contradictory, opinions.

Browning also argues the opinions of her physicians were more credible than the Trust's doctor, or the technical advisor. She notes that Dr. DiNardo was her treating cardiologist, and thus most familiar with her condition. But there is no presumption favoring a treating physician because "[o]nce the Trust denies a claim and the claim advances to a show cause proceeding, the claimant has the burden of proving there was a reasonable medical basis for the attesting physician's representations." *Id.* at 189. Browning adds that neither Dr. DiNardo nor Dr. McLean received compensation for their opinions, but that Dr. Wang often provides opinions for the Trust. And she cites decisions rejecting Dr. Wang's determinations in two other cases. But even if correct, Browning needed to introduce evidence showing that Dr. Wang's and Dr. Vigilante's conclusions

7

lacked a reasonable medical basis. *See id.* at 190. Ancillary attacks on character and credibility do not suffice.

Finally, Browning argues that even if the Trust accurately measured her RJA/LAA, a margin of error accounting for "inter-reader variability" allows her to qualify for benefits. The District Court correctly concluded that adopting Browning's argument "would allow a claimant to recover Matrix Benefits with an RJA/LAA ratio that does not meet the definition under the Settlement Agreement and would render meaningless this critical provision of the Settlement Agreement." (App. at 15.)

B.

Browning also claims error in the decision to exclude Dr. McLean's second affidavit. The procedures in the Audit Rules provide the relevant framework. Under Audit Rule 18(b), a claimant may challenge the Trust's determination to deny benefits by submitting contesting materials with the Trust. Under Audit Rule 26, if the matter goes to Show Cause, the claimant's response "shall be limited to the issues and evidence identified by the Claimant in the Claimant's Contest Materials the Claimant has submitted to the Trust, unless upon good cause shown the Special Master allows the introduction of additional issues and/or evidence." (App. at 198.) And Audit Rule 29 closes the record before the Special Master fourteen days after the Trust files its reply, unless the claimant shows good cause for the filing of a surreply.

The Trust's reply to Browning's submission to the Special Master questioned Dr. McLean's findings, and Browning sought permission to file both a surreply and another

8

affidavit from Dr. McLean. Browning argued that the Trust misconstrued Dr. McLean's affidavit, warranting rebuttal. The Special Master accepted that claim as good cause and allowed her to reframe his testimony in the most favorable light in a surreply. But the Special Master declined to allow a new affidavit from Dr. McLean, a decision logically connected to Browning's desire to correct, rather than supplement, the closed record. That decision is not an abuse of discretion.

## III.

For all these reasons, we will affirm the order of the District Court.

9